**LAW OFFICES OF KENNETH L. BAUM**
A Limited Liability Company
167 Main Street
Hackensack, New Jersey 07601
Kenneth L. Baum, Esq.
kbaum@kenbaumdebtsolutions.com
(201) 853-3030
(201) 584-0297 Facsimile
*Attorneys for Debtors-in-Possession*

| | | |
|---|---|---|
| In re: | : | UNITED STATES BANKRUPTCY COURT |
| | : | FOR THE DISTRICT OF NEW JERSEY |
| EZ MAILING SERVICES, INC. d/b/a EZ | : | CASE NO. 19-17900 (SLM) |
| WORLDWIDE EXPRESS AND UNITED | : | HON. STACEY L. MEISEL |
| BUSINESS EXPRESS,[1] | : | |
| | : | Chapter 11 |
| | : | |
| Debtor-in Possession. | : | |
| | : | |
| | : | UNITED STATES BANKRUPTCY COURT |
| | : | FOR THE DISTRICT OF NEW JERSEY |
| | : | CASE NO. 19-17906 (SLM) |
| UNITED BUSINESS FREIGHT | : | HON. STACEY L. MEISEL |
| FORWARDERS, LLC, | : | |
| | : | Chapter 11 |
| Debtor-in-Possession. | : | |
| | : | |
| | : | **Hearing Date and Time:** |
| | : | |

**DEBTORS' JOINT MOTION FOR (i) ORDER (A) APPROVING TERM SHEET BETWEEN
THE DEBTORS AND QX LOGISTIX LLC, (B) APPROVING BIDDING PROCEDURES FOR
THE SALE OF THE DEBTORS' ASSETS RELATED TO THEIR VERNON, CALIFORNIA
AND AMAZON OPERATIONS, AND (C) SCHEDULING FINAL SALE HEARING, AND (ii)
ORDER AUTHORIZING AND APPROVING (A) THE SALE OF SUCH ASSETS FREE AND
CLEAR OF LIENS AND OTHER INTERESTS, PURSUANT TO SECTIONS 363(b), (f), AND
(m) OF THE BANKRUPTCY CODE, (B) THE ASSUMPTION AND ASSIGNMENT OF THE**

---

[1]   The Debtors in these Chapter 11 cases are (i) EZ Mailing Services, Inc. d/b/a EZ Worldwide Express and
United Business Xpress, whose last four digits of its taxpayer identification number are 0072, and (ii) United
Business Freight Forwarders, LLC, whose last four digits of its taxpayer identification number are 0577.

1

**DEBTORS' LEASE OF REAL PROPERTY AT 2050-2080 EAST 49TH STREET, VERNON, CALIFORNIA, TO QX LOGISTIX LLC, PURSUANT TO SECTIONS 365(a) AND (f) OF THE BANKRUPTCY CODE, AND (C) GRANTING RELATED RELIEF**

EZ Mailing Services, Inc. d/b/a EZ Worldwide Express and United Business Express ("**EZ**") and United Business Freight Forwarders, LLC ("**UBFF**"), the above-referenced debtors-in-possession (together, the "**Debtors**"), by and through their undersigned counsel, hereby submit this joint motion (the "**Motion**"), pursuant to Sections 105(a), 363, and 365 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "**Local Rules**") 6004-1 and 6004-2, for: (a) entry of an order (the "**Interim Relief Order**"), *inter alia*, (i) approving that certain term sheet between the Debtors and QX Logistix LLC ("**QX Logistix**"), (ii) approving bidding procedures (the "**Bidding Procedures**") in connection with the sale of the Debtors' assets related to their Vernon, California and Amazon operations (the "**California Assets**"), and (iii) scheduling a final sale hearing (the "**Sale Hearing**") to consider entry of an order approving the sale of the California Assets; and (b) an order authorizing and approving (i) the sale of the California Assets free and clear of liens, encumbrances, and other interests (the "**Sale**"), (ii) the assumption and assignment of the Debtors' lease of real property at 2050-2080 East 49th Street, Vernon, California (the "**Vernon Lease**"), to QX Logistix, and (iii) granting related relief, respectfully represent:[2]

### JURISDICTION

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b).

---

[2] Unless otherwise noted, the capitalized terms herein shall have the definitions ascribed to them in the Certification of Vijay K. Aggarwal ("**Aggarwal Cert.**") attached hereto as **Exhibit A**.

This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are Sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rules 6004-1 and 6004-2.

## BACKGROUND

4.      On April 18, 2019, Christopher Carey, Azadian Group, LLC ("**Azadian**"), and Change Capital Holdings I, LLC ("**Change Capital**") filed involuntary Chapter 11 petitions against the Debtors pursuant to Section 303(b) of the Bankruptcy Code.

5.      On May 16, 2019, the Debtors consented to orders for relief pursuant to Section 303(h) of the Bankruptcy Code.  The Debtors continue to operate their business and manage their assets as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.  No official committee has yet been appointed in these Chapter 11 cases.

6.      The Debtors are in the business of providing transportation logistics to a wide variety of customers throughout the United States and overseas, including wholesale and retail sellers of merchandise.  Their business activities are generally divided among four (4) different operations: "Small Packages," which covers domestic and international shipping; "Retail Deliveries," which covers making deliveries for large retailers from their warehouses to their stores; "Warehousing," which covers storing, pick and pack, and preparing merchandise for pickup by retailers; and "Amazon," which covers deliveries for Amazon in the Los Angeles area.  (Aggarwal Cert., ¶ 2.)

**A.      The Debtors' Pre-Petition Secured Debt.**

7.      Pursuant to that certain Accounts Receivable Agreement with Recourse dated as of December 30, 2016, between North Mill Capital LLC ("**North Mill**") and the Debtors (the "**North**

3

**Mill Agreement**"), the Debtors have and continue to sell to North Mill, free and clear of any and all liens, claims, and interests therein, all of the Debtors' right, title, and interest in and to all Eligible Accounts (as that term is defined in the North Mill Agreement) approved and deemed acceptable by North Mill and grant North Mill, as security for the repayment of the Debtors' obligations arising under the North Mill Agreement, a first priority lien on substantially all of the Debtors' assets. (Aggarwal Cert., ¶ 3.)

8.    Pursuant to the *Interim Order Granting Alleged Debtors' Joint Motion for Entry of an Order Permitting the Alleged Debtors to Continue to Factor Their Accounts Receivable and/or Incur Secured Debt in the Ordinary Course of Business or, in the Alternative, to Factor Their Accounts Receivable and/or Incur Secured Debt During the "Gap Period" Pursuant to Bankruptcy Code Sections 105 and 364 and on the Same Terms Previously Approved of by This Court as Part of the Exit Facility in Connection with the Alleged Debtors' Prior Voluntary Chapter 11 Cases* dated April 24, 2019 [Dkt. No. 7], the Court, *inter alia*, authorized the Debtors to continue to perform their obligations under the North Mill Agreement and grant North Mill a first priority lien on their assets to secure the repayment of the Debtors' obligations to North Mill.

9.    In April 2018, May 2018, and September 2018, the Debtors entered into certain Merchant Receivables Purchase and Security Agreements with Azadian (the "**Azadian Agreements**"). Pursuant to the Azadian Agreements, *inter alia*, the Debtors granted Azadian a second priority lien on their accounts receivable, subordinate to North Mill, in exchange for financing.  (Aggarwal Cert., ¶ 4.)

10.    In January 2019, the Debtors entered into that certain Merchant Receivables Purchase and Security Agreement with Change Capital (the "**Change Capital Agreement**").  Pursuant to that agreement, *inter alia*, the Debtors granted Change Capital a second lien on their accounts receivable, subordinate to North Mill, in exchange for financing.  (Aggarwal Cert., ¶ 5.)

4

## B.    <u>Events Leading to Chapter 11.</u>

11.    In recent months, the Debtors have suffered mounting operating losses and liquidity

issues due, in large part, to the loss of a significant customer and the costs of obtaining financing.

(Aggarwal Cert., ¶ 6.)  As a result of those circumstances, the Debtors concluded that their long-term

prospects for viability were dim.  Accordingly, in or about January 2019, the Debtors began searching

in earnest for a potential purchaser or purchasers for their business as a going concern.  (Aggarwal

Cert., ¶ 6.)

12.    Over the past four (4) months, the Debtors have spoken with several potential interested

parties regarding the sale of their four (4) operations.  One of those parties was Change Capital, which

expressed an interest in the Debtors' Retail Deliveries and Warehousing operations on the West Coast,

as well as their Amazon operations.  (Aggarwal Cert., ¶ 7.)

13.    Over the past several weeks, the Debtors have negotiated the terms of a potential sale of

the California Assets to QX Logistix, a newly-formed entity owned and/or controlled by Change

Capital and Azadian, and of which Carey is Chief Executive Officer.  Simultaneously, the Debtors

have continued to market the California Assets for sale to other third parties, in an effort to maximize

their value.  (Aggarwal Cert., ¶ 8.)

14.    After several months of marketing the California Assets for sale, the Debtors have

concluded that QX Logistix is the only entity willing to become a stalking horse bidder for the

California Assets pursuant to a signed contract, and the only entity willing to assume responsibility for

over $300,000 of operating shortfalls that the Debtors are estimated to incur during the three-week

period ending on May 31, 2019.  In the absence of QX Logistix bridging these operating shortfalls, the

Debtors would have to immediately shut down all of their operations and terminate all of their

employees.  Accordingly, in an effort to avoid dissipation of the value of the California Assets and

5

preserve the jobs of the Debtors' employees related to those assets, which would otherwise be lost if a

sale is not completed in the very near future, the Debtors entered into a binding Term Sheet with QX

Logistix (the "**Term Sheet**," a true copy of which is attached as Exhibit A to the Aggarwal Cert.),

which provides, *inter alia*:

    a.  The California Assets shall be sold to QX Logistix, free and clear of all liens, claims, interests, and encumbrances, with the exception of the Debtors' existing accounts receivable associated with the California Assets, which will be sold subject to the existing liens and security interests of North Mill, Azadian, and Change Capital;

    b.  The consideration to be paid by QX Logistix for the California Assets consists of: (i) a non-refundable "hard deposit" of $125,000 (the "**Hard Deposit**"), which shall be paid into the escrow account of the Debtors' counsel upon Court approval of the Term Sheet and is earmarked for $25,000 to fund the Debtors' professional fees and $100,000 to fund operating shortfalls in connection with the operation of the Debtors' Vernon, California and Amazon businesses; (ii) a $125,000 over-advance to the Debtors by North Mill pursuant to the North Mill Agreement (the "**Over-Advance**") within one week of Court approval of the Term Sheet, which shall be funded by QX Logistix through a joint participation agreement with North Mill, to fund operating deficiencies; (iii) a credit bid of Change Capital's and Azadian's secured claim in the amount of $100,000; (iv) an agreement to pay over to the Debtors and their estates the first $100,000 received by Change Capital and Azadian on account of their second priority lien on the Debtors' accounts receivable; and (v) the release by Change Capital and Azadian of any guarantors of the Debtors' debt to them (including, without limitation, Vijay Aggarwal and Ajay Aggarwal);

    c.  With the exception of the cure of existing monetary defaults under the Debtors' lease for their Vernon, California facility, which QX Logistix shall do as part of a Court-approved assumption and assignment of such lease, and the assumption of the Debtors' payroll obligations in connection with the California Assets, in an amount not to exceed $125,000, QX Logistix shall not assume any of the Debtors' liabilities;

    d.  The bid procedures in connection with the sale of the California Assets shall include a minimum initial overbid increment of $125,000 and subsequent overbid increments of $25,000;

     e.   A closing date on or before May 31, 2019; and

     f.   Azadian and Change Capital may credit bid the maximum amount of their remaining claims not already contributed under the "Consideration" section in the Term Sheet, pursuant to Section 363(k) of the Bankruptcy Code.

(See Term Sheet.)

## GROUNDS FOR APPROVAL OF THE MOTION

**A.**    **Section 363(b) of the Bankruptcy Code Authorizes the Approval of the Term Sheet and the Sale of the California Assets Under the Circumstances Present Here.**

    15.    Under Section 363 of the Bankruptcy Code, a debtor in possession may sell property of its estate outside of the ordinary course of its business, subject to the approval of the court after notice and a hearing. See 11 U.S.C. § 363(b)(1). In the Third Circuit and elsewhere, it is well settled that a decision to sell assets outside the ordinary course of business, prior to confirmation of a plan, must be based upon the sound business judgment of the debtor. See, e.g., In re Martin, 91 F.3d 389 (3d Cir. 1996), citing, In re Schipper, 933 F.2d 513 (7th Cir. 1991); Stephens Indus., Inc. v. McClung, 789 F.2d 386 (6th Cir. 1986); In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983); Licensing By Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 387 (2d Cir. 1997) ("A sale of a substantial part of a Chapter 11 estate may be conducted if a good business reason exists to support it."); Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983); In re Chateaugay Corp., 973 F.2d 141, 143 (2d Cir. 1992); Stephens Indus. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) ("bankruptcy court can authorize a sale of all a Chapter 11 Debtor's assets under [section] 363(b)(1) when a sound business purpose dictates such action."); Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the Debtor articulates a reasonable basis for its business decisions (as distinct from a decision

made arbitrarily or capriciously), courts will generally not entertain objections to the Debtor's

conduct.").

16.     Courts typically consider the following four factors in determining whether a proposed

sale satisfies this standard:

> (i)     whether a sound business justification exists for the sale;
>
> (ii)    whether adequate and reasonable notice of the sale was given to interested parties;
>
> (iii)   whether the sale will produce a fair and reasonable price for the property; and
>
> (iv)    whether the parties have acted in good faith.

See, e.g., In re Weatherly Frozen Food Group, Inc., 149 B.R. 480, 483 (Bankr. N.D. Ohio 1992); In re

Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991).

17.     Here, each of these four factors is satisfied.  First, sound business reasons exist for the

Debtors' efforts to sell the California Assets in the proposed manner.  The Debtors have analyzed the

viable options for their Vernon, California and Amazon operations and determined for a number of

reasons that a plan to exit bankruptcy as a stand-alone going concern business is not a likely option.

Instead, the Debtors have determined that a private sale of the California Assets to QX Logistix,

subject to higher and better offers, should be pursued.  Many courts have approved private sales of

estate property pursuant to Section 363(b)(1) when there has been a valid business reason for not

conducting an auction. See, e.g., In re Tribune Company, et al., Case No. 08-13141(KJC) (Bankr. D.

Del. May 28, 2009) (order approving the private sale of real property for approximately $6 million);

Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. March 4. 2009) (order approving

the private sale of real property); In re W.R. Grace & Co., Case No. 01-01139 (JKF) (Bankr. D. Del.

Dec. 18, 2008) (order approving the private sale of real property for approximately $3.8 million)

18.     Here, as described in the Aggarwal Cert., the Debtors actively marketed the California

Assets for several months and did not receive any firm offer to purchase those assets other than QX

Logistix's offer.  The Debtors believe that their extensive pre-petition and post-petition marketing

efforts, conducted in the midst of severe and worsening financial straits, have produced a buyer

willing to pay fair value for the California Assets and, equally important, preserve the jobs of

approximately 200 employees.  The Debtors do not believe the speculative upside of an auction is

worth the risk of losing a motivated buyer who is prepared to pay a Hard Deposit of $125,000 upon

Court approval of the Term Sheet and another $125,000 within one week thereafter, as well as the

other consideration described above.

19.     Second, through service of the Motion on all creditors and parties-in-interest, as well as

any parties who previously expressed interest in purchasing the California Assets, the Debtors will be

providing adequate and reasonable notice of the opportunity for other potential interested bidders to

bid on those assets and of the opportunity to object to the sale of those Assets to all interested parties.

See, e.g., Folger Adam Security Inc. v. DeMatteis/MacGregor, 209 F.3d 252, 265 (3d Cir. 2000)

(stating that notice is sufficient if it includes "the time and place of any public sale, the terms and

conditions of any private sale, states the time for filing objections and, if real estate is being sold,

provides a general description of the property"); In re WBQ Partnership, 189 B.R. 97, 103 (Bankr.

E.D. Va. 1995) ("'notice is sufficient if it includes the terms and conditions of the sale, if it states the

time for filing objections, and if the estate is selling real estate, it generally describes the property'")

(quoting In re Karpe, 84 B.R. 926, 929 (Bankr. M.D. Pa. 1988)).

20.     Third, the Bidding Procedures proposed herein will provide for an open and competitive

bidding process for the California Assets.  Fourth, the Debtors are proceeding in good faith and will

make a showing at the Sale Hearing that QX Logistix has acted in good faith.  Accordingly, the

9

Debtors submit that the proposed Sale and Term Sheet are proper and justified under Section

363(b)(1) of the Bankruptcy Code.

**B.**     **The Sale of the California Assets Should be Free and Clear of Liens.**

21.     Pursuant to Section 363(f) of the Bankruptcy Code, a debtor in possession may sell

property "free and clear of any interest in such property of an entity other than the estate" if any one of

the following conditions is satisfied:

> (i)     applicable non-bankruptcy law permits the sale of such property free
> and clear of such interest;
>
> (ii)     such entity consents;
>
> (iii)     such interest is a lien and the price at which such property is to be sold is
> greater than the aggregate value of all liens on such property;
>
> (iv)     such interest is in bona fide dispute; or
>
> (v)     such entity could be compelled, in a legal or equitable proceeding, to
> accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

22.     To facilitate the sale of the California Assets, the Debtors propose that any liens, claims

and encumbrances asserted against the California Assets be transferred, and attach, to the sale proceeds

received by the Debtors.  All liens on the California Assets will be satisfied or will attach to the

proceeds of the sale of the California Assets with the same force, effect and priority as such liens have

on those assets, subject to the rights and defenses, if any, of the Debtors and any party in interest with

respect thereto.  Accordingly, the Debtors submit that the sale of the California Assets free and clear

of liens, claims, interests, and encumbrances satisfies the statutory prerequisites of Section 363(f) of the

Bankruptcy Code.

**C.**     **Assumption and Assignment of the Vernon Lease.**

23.     To facilitate the sale of the California Assets, the Debtors also seek to assume and

10

assign the Vernon Lease to QX Logistix. Section 365 of the Bankruptcy Code authorizes a debtor to

assume and/or assign its executory contracts subject to the approval of the Court:

> (a) Except as provided in . . . subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtors.
>
> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee:
>
> (A)  cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform non-monetary obligations under an expired lease of real property, if it is impossible for the trustee to cure such default by performing non-monetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;
>
> (B)  compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides   adequate  assurance  of  future  performance  under  such contract or lease. . . .
>
> (f)(2) The trustee may assign an executory contract or unexpired lease of the debtor only if —
>
> (A)  the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

See 11 U.S.C. §§ 365(a), (b)(1), (f)(2). Accordingly, Section 365 of the Bankruptcy Code authorizes

the proposed assumptions and assignments of executory contracts, provided that the defaults under

such contracts are cured and adequate assurance of future performance is provided.

24.     It is well settled that the meaning of "adequate assurance of future performance"

depends on the facts and circumstances of each case, but that a contract counterparty is not required to

receive an absolute guarantee of future performance. See, e.g., In re Glycogensys, Inc., 352 B.R. 568,

578 (Bankr. D. Mass. 2006) ("[I]t is appropriate to evaluate the financial condition of the assignee and

the likelihood that the non-Debtor party will receive the benefit of its bargain from the assignee");

Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D.N.J. 1989)

(adequate assurance of future performance does not mean absolute assurance that Debtors will thrive

and pay rent); In re Natco Indus., Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (same).

25.     As noted in the Term Sheet, the Debtors believe that monetary defaults relating to the

Vernon Lease total approximately $185,000. The Debtors will provide evidence that all requirements

for the assumption and assignment of the Vernon Lease to QX Logistix will be satisfied. Thus, the

Debtors respectfully submit that, by the conclusion of the Sale Hearing, the requirements for

assumption and assignment of the Vernon Lease will be satisfied.

**D.      The Court Should Deem QX Logistix to be a "Good Faith Purchaser."**

26.     The Debtors also seek entry of an order deeming QX Logistix to be a "good faith

purchaser" entitled to the protections afforded under Section 363(m) of the Bankruptcy Code, which

provides: "The reversal or modification on appeal of an authorization under subsection (b) or (c) of

this section of a sale or lease of property does not affect the validity of a sale or lease under such

authorization to an entity that purchased or leased such property in good faith, whether or not such

entity knew of the pendency of the appeal, unless such authorization and such sale or lease were

12

stayed pending appeal." 11 U.S.C. § 363(m).

27.     The Third Circuit has held that "good faith" under Section 363(m) "encompasses one

who purchases in 'good faith' and for 'value.'" Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143,

147 (3d Cir. 1986). "Typically, the misconduct that would destroy a purchaser's good faith status at a

judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an

attempt to take grossly unfair advantage of other bidders." Id.  As for value, "an auction may be

sufficient to establish that one has paid 'value' for the assets of a bankrupt." Id.

28.     QX Logistix satisfies both of these standards.  There has been no fraud or collusion

between the Debtors and QX Logistix, nor any attempt to take advantage of other bidders.  As

described in the Aggarwal Cert., the Debtors actively marketed the California Assets for several

months and did not receive any firm offer to purchase those assets other than QX Logistix's offer.  To

further ensure that the value of the California Assets is being maximized through the Sale, the Debtors

are providing notice of the Motion and Sale Hearing to all creditors and parties-in-interest, all parties

who have filed a notice of appearance in the Debtors' Chapter 11 proceedings, and all parties who

have previously expressed an interest in purchasing the California Assets.  The Debtors submit that

these circumstances warrant the entry of an order deeming QX Logistix to be a good faith purchaser

under Section 363(m) of the Bankruptcy Code.

**E.     The Proposed Bidding Procedures are Appropriate Under the Circumstances.**

29.     In view of the above-described exigent circumstances, the Debtors request that the

Court approve the proposed Bidding Procedures for the California Assets encompassed in the Term

Sheet, which include a minimum initial overbid increment of $125,000 and subsequent overbid

increments of $25,000.  In addition, the Debtors propose that any competitive bid must be

accompanied by the payment of a good-faith deposit of not less than $25,000 (i.e., 10% of the

13

combined Hard Deposit and Over-Advance), paid in immediately available funds into escrow with the

Debtors' counsel, not less than two (2) business days prior to the Sale Hearing.  Because the proposed

Sale is subject to overbid, and given the ability of other potentially interested parties to provide

competing offers for the Assets, the proposed Sale will not result in a "windfall" to the successful

bidder at the expense of creditors of the Debtors' estates.  The Debtors submit that, under the

circumstances, the proposed Bidding Procedures are fair and provide interested parties with an

opportunity to submit competitive bids for the California Assets.

<div align="center">

**REQUEST FOR WAIVER OF STAYS**

</div>

30.    In addition, by this Motion, the Debtors seek a waiver of any stay of the effectiveness

of the order approving the relief requested in this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n

order authorizing the use, sale, or lease of property other than cash collateral is stayed until the

expiration of 14 days after entry of the order, unless the court orders otherwise."  Similarly, pursuant to

Bankruptcy Rule 6006(d), "[a]n order authorizing the trustee to assign an executory contract or

unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order,

unless the court orders otherwise."  For the reasons described above, the Debtors submit that ample

cause exists to justify a waiver of the 14-day stays imposed by Bankruptcy Rules 6004(h) and 6006(d),

to the extent that they apply.

<div align="center">

**NOTICE**

</div>

31.    Notice of this Motion has been provided to:  (i) the Office of the U.S. Trustee; (ii)

counsel for the Debtors' pre-petition and post-petition secured lenders; (iii) the Internal Revenue

Service; (iv) all creditors and parties-in-interest; (v) the Debtors' employees; (vi)  all parties having

requested notice in these Chapter 11 cases pursuant to Bankruptcy Rule 2002; (vii) the California

Board of Equalization (Sales and Use Tax); (viii) the California Employment Development

<div align="center">14</div>

Department; (ix) the California Franchise Tax Board; and (x) all other parties who have expressed a bona fide interest in purchasing the California Assets.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

32.      No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter the proposed Order Approving Term Sheet and for Other Relief and Sale Order attached as **Exhibits B and** C, respectively, and grant such other and further relief to the Debtors as the Court may deem just and proper.

<div style="margin-left: 45%">

Respectfully submitted,

LAW OFFICES OF KENNETH L. BAUM LLC
Attorneys for the Debtors

By:_____*/s/ Kenneth L. Baum*_____
      Kenneth L. Baum

</div>

Dated: May 16, 2019

# EXHIBIT A

**LAW OFFICES OF KENNETH L. BAUM**
A Limited Liability Company
167 Main Street
Hackensack, New Jersey 07601
Kenneth L. Baum, Esq.
kbaum@kenbaumdebtsolutions.com
(201) 853-3030
(201) 584-0297 Facsimile
*Attorneys for Debtors-in-Possession*

| | | |
|---|---|---|
| In re: | : | |
| | : | UNITED STATES BANKRUPTCY COURT |
| EZ MAILING SERVICES, INC. d/b/a EZ | : | FOR THE DISTRICT OF NEW JERSEY |
| WORLDWIDE EXPRESS AND UNITED | : | CASE NO. 19-17900 (SLM) |
| BUSINESS EXPRESS,[1] | : | HON. STACEY L. MEISEL |
| | : | |
| | : | |
| | : | Chapter 11 |
| Debtor-in-Possession. | : | |
| | : | |
| | : | UNITED STATES BANKRUPTCY COURT |
| | : | FOR THE DISTRICT OF NEW JERSEY |
| | : | CASE NO. 19-17906 (SLM) |
| UNITED BUSINESS FREIGHT | : | HON. STACEY L. MEISEL |
| FORWARDERS, LLC, | : | |
| | : | Chapter 11 |
| Debtor-in-Possession. | : | |
| | : | |
| | : | |
| | : | |

**CERTIFICATION OF VIJAY K. AGGARWAL IN SUPPORT OF DEBTORS' JOINT
MOTION FOR (i) ORDER (A) APPROVING TERM SHEET BETWEEN THE
DEBTORS AND QX LOGISTIX LLC, (B) APPROVING BIDDING PROCEDURES FOR
THE SALE OF THE DEBTORS' ASSETS RELATED TO THEIR VERNON,
CALIFORNIA AND AMAZON OPERATIONS, AND (C) SCHEDULING FINAL SALE
HEARING, AND (ii) ORDER AUTHORIZING AND APPROVING (A) THE SALE OF
SUCH ASSETS FREE AND CLEAR OF LIENS AND OTHER INTERESTS, PURSUANT
TO SECTIONS 363(b), (f), AND (m) OF THE BANKRUPTCY CODE, (B) THE
ASSUMPTION AND ASSIGNMENT OF THE DEBTORS' LEASE OF REAL
PROPERTY AT 2050-2080 EAST 49TH STREET, VERNON, CALIFORNIA, TO QX
LOGISTIX LLC, PURSUANT TO SECIONS 365(a) and (f) OF THE BANKRUPTCY**

---

[1]    The Alleged Debtors in these Chapter 11 cases are (i) EZ Mailing Services, Inc. d/b/a EZ Worldwide Express and United Business Xpress, whose last four digits of its taxpayer identification number are 0072, and (ii) United Business Freight Forwarders, LLC, whose last four digits of its taxpayer identification number are 0577.

## CODE, AND (C) GRANTING RELATED RELIEF

VIJAY K. AGGARWAL, of full age, hereby certifies and states as follows:

1.        I am the Vice President of EZ Mailing Services, Inc. d/b/a EZ Worldwide Express
and United Business Express ("**EZ**") and United Business Freight Forwarders, LLC ("**UBFF**"),
the above-referenced debtors-in-possession (together, the "**Debtors**").  I am familiar with the
facts and circumstances set forth herein and am authorized to make this Certification in support
of the *Debtors' Joint Motion for (i) Order (A) Approving Term Sheet Between the Debtors and
QX Logistix LLC, (B) Approving Bidding Procedures for the Sale of the Debtors' Assets Related
to Their Vernon, California and Amazon Operations, and (C) Scheduling Final Sale Hearing,
and (ii) Order Authorizing and Approving (A) the Sale of Such Assets Free and Clear of Liens and
Other Interests, Pursuant to Sections 363(b), (f), and (m) of the Bankruptcy Code, (B) the
Assumption and Assignment of the Debtors' Lease of Real Property at 2050-2080 East 49th
Street, Vernon, California, to QX Logistix LLC, pursuant to Sections 365(a) and (f) of the
Bankruptcy Code, and (c) Granting Related Relief* (the "**Motion**").

2.        The Debtors are in the business of providing transportation logistics to a wide
variety of customers throughout the United States and overseas, including wholesale and retail
sellers of merchandise.  Their business activities are generally divided among four (4) different
operations: "Small Packages," which covers domestic and international shipping; "Retail
Deliveries," which covers making deliveries for large retailers from their warehouses to their
stores; "Warehousing," which covers storing, pick and pack, and preparing merchandise for
pickup by retailers; and "Amazon," which covers deliveries for Amazon in the Los Angeles area.

3.        Pursuant to that certain Accounts Receivable Agreement with Recourse dated as
of December 30, 2016, between North Mill Capital LLC ("**North Mill**") and the Debtors (the

2

"**North Mill Agreement**"), the Debtors have and continue to sell to North Mill, free and clear of any and all liens, claims, and interests therein, all of the Debtors' right, title, and interest in and to all Eligible Accounts (as that term is defined in the North Mill Agreement) approved and deemed acceptable by North Mill and grant North Mill, as security for the repayment of the Debtors' obligations arising under the North Mill Agreement, a first priority lien on substantially all of the Debtors' assets.

4.      In April 2018, May 2018, and September 2018, the Debtors entered into certain Merchant Receivables Purchase and Security Agreements with Azadian (the "**Azadian Agreements**").  Pursuant to the Azadian Agreements, *inter alia*, the Debtors granted Azadian a second priority lien on their accounts receivable, subordinate to North Mill, in exchange for financing.

5.      In January 2019, the Debtors entered into that certain Merchant Receivables Purchase and Security Agreement with Change Capital (the "**Change Capital Agreement**"). Pursuant to that agreement, *inter alia*, the Debtors granted Change Capital a second lien on their accounts receivable, subordinate to North Mill, in exchange for financing.

6.      In recent months, the Debtors have suffered mounting operating losses and liquidity issues due, in large part, to the loss of a significant customer and the costs of obtaining financing.  As a result of those circumstances, I and other representatives of the Debtors concluded that their long-term prospects for viability were dim.  Accordingly, in or about January 2019, the Debtors began searching in earnest for a potential purchaser or purchasers for their business as a going concern.

7.      Over the past four (4) months, I and other representatives of the Debtors have spoken with several potential interested parties regarding the sale of their four (4) operations. One of those parties was Change Capital, which expressed an interest in the Debtors' Retail

3

Deliveries and Warehousing operations on the West Coast, as well as their Amazon operations (the "**California Assets**").

8.      Over the past several weeks, the Debtors have negotiated the terms of a potential sale of the California Assets to QX Logistix, a newly-formed entity owned and/or controlled by Change Capital and Azadian, and of which Carey is Chief Executive Officer. Simultaneously, the Debtors have continued to market the California Assets for sale to other third parties, in an effort to maximize their value.

9.      After several months of marketing the California Assets for sale, I and other representatives of the Debtors have concluded that QX Logistix is the only entity willing to become a stalking horse bidder for the California Assets pursuant to a signed contract, and the only entity willing to assume responsibility for over $300,000 of operating shortfalls that the Debtors are estimated to incur during the three-week period ending on May 31, 2019. In the absence of QX Logistix bridging these operating shortfalls, the Debtors would have to immediately shut down all of their operations and terminate all of their employees. Accordingly, in an effort to avoid dissipation of the value of the California Assets and preserve the jobs of the Debtors' employees related to those assets, which would otherwise be lost if a sale is not completed in the very near future, the Debtors entered into a binding Term Sheet with QX Logistix for the sale of the California Assets (the "**Term Sheet**," a true copy of which is attached as Exhibit A).

10.     All negotiations between I and other representatives of the Debtors, on the one hand, and representatives of QX Logistics, on the other, have been in good faith and at arms' length. Neither I nor the Debtors' President, Ajay Aggarwal, have been promised an ownership interest in, or employment with, QX Logistix.

11.     Moreover, while the Term Sheet provides that Change Capital Holdings I, LLC

4

and Azadian Group, LLC shall release any guarantors of the Debtors' debt to them (including,
without limitation, Ajay Aggarwal and I) from any past obligations, Ajay Aggarwal and I have
agreed, subject to definitive documentation in an asset purchase agreement, to (i) maintain the
confidentiality of the business information associated with the California Assets, (ii) enter into a
mutual non-disparagement agreement with Christopher Carey, Azadian Group, LLC, Change
Capital Holdings I, LLC, Raffi Azadian and Buyer, (iii) enter into a non-compete clause with QX
Logistix in connection with the sale of California Assets, and (iv) reasonably cooperate with QX
Logistix during a transition period.

12.    The only apparent alternative to selling the California Assets to QX Logistix, as
contemplated in the Term Sheet, is terminating the Debtors' operations associated with those
assets immediately, which would result in the loss of the jobs of approximately 200 employees.
Under these circumstances, I believe the sale of the California Assets to QX Logistix is in the
best interests of the Debtors and their estates.

I certify pursuant to 28 U.S.C. § 1746 under penalty of perjury that the foregoing is true and
correct.

Executed on May 15, 2019                          /s/ Vijay K. Aggarwal
                                                  Vijay K. Aggarwal

5

# EXHIBIT A

EXECUTION 5.15.19

## TERM SHEET

This binding Term Sheet presents the principal terms of the stalking horse bid (the "Stalking Horse Bid") of QX Logistix LLC (the "Buyer") for the acquisition (the "California Acquisition") of certain of the assets of E Z Mailing Services, Inc. and United Business Freight Forwarders, LLC (collectively, the "Debtors," and together with the Buyer, the "Parties") free and clear of any and all claims, liens, encumbrances and interests of any kind or nature whatsoever.

| Purpose | Unless otherwise provided herein, the California Acquisition shall be effectuated pursuant to a Section 363 sale ("Section 363 Sale") of the California Assets (defined below) free and clear of all claims, liens, encumbrances and interests of any kind or nature whatsoever. In the event of a Section 363 Sale, the California Acquisition shall be effectuated in accordance with expedited bidding and auction procedures to be mutually agreed upon by the Debtors and the Buyer (the "Bid Procedures"). The Bid Procedures shall provide for the Buyer to act as a "stalking horse" in exchange for the bidding protections outlined in the Bid Procedures and shall be approved by the United States Bankruptcy Court for the District of New Jersey (the "Court"). |
|---|---|
| | The Debtors own and operate a facility in Vernon, California. The approximately 200 current employees at the facility will be given the opportunity to work for the Buyer. |
| **Assets to be Sold** | All assets (including but not limited to equipment, computers, computer software, electronically stored information, supplies, spare parts, pallet racking, works in progress, motor vehicles, and trailers) associated with the facility in Vernon, California and the Debtors' business with Amazon (collectively, the "California Assets"). |
| **Accounts Receivable of the California Business** | The Debtors existing accounts receivable (the "California Accounts Receivable") associated with the California Assets shall be sold to Buyer, provided, however, that the California Accounts Receivable will be sold subject to the existing liens and security interests of North Mill Capital, Azadian Group, LLC and Change Capital Holdings 1, LLC. The Sale of the California Accounts Receivable will be subject to definitive acquisition documents that are in form and substance reasonably acceptable to Buyer and North Mill Capital. |
| **Excluded Assets** | "Excluded Assets," which shall not be transferred to Buyer and shall be retained by Debtors and their bankruptcy estates, shall include the Debtors' existing accounts receivable not associated with the California Assets and all other property, real or personal, not associated with the California Assets. |

EXECUTION 5.15.19

| | |
|---|---|
| **Section 363 Sale and Timing** | Within two (2) calendar days of the execution of this Term Sheet, the Debtors shall file with the Court a motion (the "Sale Motion") seeking (i) approval of the Section 363 Sale of the California Assets free and clear of all claims, liens, encumbrances and interests of any kind or nature whatsoever, pursuant to Section 363 of the Bankruptcy Code, and the assumption and assignment of the Debtors' lease for its Vernon, California facility (as described below) pursuant to Section 365 of the Bankruptcy Code and (ii) for an order in form and substance acceptable to Buyer, approving the Bid Procedures. An Order approving the Bid Procedures and granting the other interim relief sought in the Sale Motion, including the approval of this Term Sheet, shall be entered no later than four (4) calendar days after the execution of this Term Sheet (the "Bid Procedures Order"). The Bid Procedures shall include, without limitation, a sale process including a minimum initial overbid increment of $125,000 (the "Initial Overbid") and subsequent overbid increments of $25,000, that shall be completed, including Court approval of the Section 363 Sale, by no later than ten (10) calendar days after the execution of this Term Sheet (the "Auction Period"). The Bid Procedures Order shall provide that if no expressions of interest are received within ten (10) calendar days of the Court's approval of the Bid Procedures, the Debtors shall promptly proceed with a private sale of the California Assets and the California Accounts Receivable to Buyer with the hearing on such a private sale to occur as soon as the Court's calendar has availability for a sale approval hearing. |
| | All documentation, including but not limited to the orders approving the Section 363 Sale (the "Section 363 Order") and the Bid Procedures, must be in a form and substance reasonably acceptable to Buyer. |
| | Debtors shall solicit competing bids for the California Assets in conjunction with seeking expedited Court approval of the Bid Procedures. |
| **Consideration** | Upon the Court's approval of this Term Sheet, Buyer shall make a deposit (the "Hard Deposit") in the amount of $125,000 into escrow account of Debtors' counsel. The Hard Deposit is intended to provide $25,000 to fund the Debtors' professional fees and $100,000 to fund operating shortfalls in connection with the Debtors' operation of the Vernon, California and Amazon businesses. Within one week of the Court approval of this Term Sheet, Buyer will enter into a junior participation agreement (the "Junior Participation Agreement") with North Mill Capital that will allow for $125,000 to be over-advanced by North Mill Capital to the Debtors to fund operating deficiencies. The Junior Participation Agreement is subject to definitive documentation and must be in a |

- 2 -

| | |
|---|---|
| | form and substance reasonably acceptable to Buyer and North Mill Capital. |
| | At closing of the California Acquisition, Buyer will provide consideration for the California Assets consisting of (i) a credit bid in the amount of $100,000 made by Azadian Group, LLC and Change Capital Holdings I, LLC, (ii) the Hard Deposit (which shall have been paid prior to closing), and (iii) an agreement to pay over to the Debtors and their bankruptcy estates the first $100,000 received by Azadian Group, LLC and Change Capital Holdings I, LLC on account of their second priority lien and security interest in the Debtors' accounts receivable. In addition, at closing, Change Capital Holdings I, LLC and Azadian Group, LLC shall release any guarantors of the Debtors' debt to them (including, without limitation, Vijay Aggarwal and Ajay Aggarwal) from any past obligations.  Subject to definitive documentation in the asset purchase agreement, Vijay Aggarwal and Ajay Aggarwal agree to (i) maintain the confidentiality of the business information associated with the California Assets, (ii) enter into a mutual non-disparagement agreement with Christopher Carey, Azadian Group, LLC, Change Capital Holdings I, LLC, Raffi Azadian and Buyer, (iii) enter into a non-compete clause with Buyer in connection with California Acquisition, and (iv) reasonably cooperate with Buyer during a transition period. |
| | If Buyer is not the successful bidder for the California Assets, Buyer will be reimbursed for the amount of the Hard Deposit by the successful bidder for the California Assets.  Such successful bidder will directly pay the amount of the Initial Overbid directly to Buyer at the closing of an alternative transaction for the California Assets that is approved by the Court. |
| **Assumed Liabilities** | Unless otherwise provided herein, Buyer would assume no liabilities of the Debtors or their bankruptcy estates.  However, in conjunction with the consummation of the Section 363 Sale of the California Assets, Buyer will cure existing monetary defaults under the lease for the Vernon, California facility in the approximate amount of $185,000 as part of a Court approved assumption and assignment of such lease by the Debtors to Buyer.  The Court approved assumption and assignment of such lease, as part of the Section 363 Order (defined below) would relieve the Debtors' estates of a claim in the approximate face amount of $2,550,000. |
| | Buyer will assume the Debtors' payroll obligations in an amount not to exceed $125,000 in conjunction with the California Acquisition, provided, however, such payroll obligations are limited to the facility in Vernon, California and the Amazon business. |
| | Buyer, in its sole and absolute discretion, may choose which |

- 3 -

EXECUTION 5.15.19

| | |
|---|---|
| | contracts and equipment leases, if any, to take assignment of, and can exclude a contract or equipment lease from assignment if the cure amount exceeds the amount Buyer is willing to pay. |
| **Credit Bid** | Debtors acknowledge that the Bid Procedures will provide that Azadian Group, LLC and Change Capital Holdings I, LLC may credit bid the maximum amount of their remaining claims not already contributed under the "Consideration" section above, pursuant to Section 363(k) of the Bankruptcy Code. |
| **Conditions Precedent to Buyer Closing** | From the date hereof and through the closing of the California Acquisition, Debtors shall operate their West Coast and Amazon businesses in the normal course without loss of material customers, franchises, licenses or permits and agree not to take any action or permit any Material Adverse Event (defined below) to occur. |
| | From the date hereof and through the closing of the California Acquisition, no Material Adverse Event shall have occurred. |
| | Entry of the Section 363 Order providing that the California Assets are being sold free and clear of any and all liens, claims, encumbrances and interests. |
| | The Section 363 Order shall (i) contain a waiver of the fourteen (14) days stay of effectiveness of such Order pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, and (ii) provide Buyer with the protections of Section 363(m) of the Bankruptcy Code. |
| | The Debtors have become Chapter 11 debtors-in-possession. |
| | The Court will approve the assumption and assignment of the Vernon, California lease by the Debtors to Buyer and contain a waiver of the fourteen (14) days stay of effectiveness of such Order pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure. |
| | Buyer will enter into an asset purchase agreement and related ancillary agreements for the California Acquisition in form and substance satisfactory to Buyer. |
| | Subject to entry into a definitive agreement that is reasonably acceptable in form and substance to North Mill Capital and Buyer, North Mill Capital will consent to the Debtors' sale of the California Assets free and clear of any and all liens, claims, encumbrances and interests to Buyer and the sale of the California Accounts Receivable subject to North Mill Capital's lien and security interest. |

- 4 -

# 4120542 v. 1

EXECUTION 5.15.19

| | |
|---|---|
| **Termination by Buyer** | If an Order for relief under Chapter 11 of the Bankruptcy Code is not entered. |
| | If the Debtors breach any of the Debtors' Due Diligence Duties (defined below). |
| | If North Mill Capital does not consent to the Debtors' sale of the California Assets free and clear of any and all liens, claims, encumbrances and interests to Buyer and the sale of the California Accounts Receivable subject to North Mill Capital's lien and security interest. |
| | If an alternative transaction for the California Assets is approved by the Court. |
| | If the California Acquisition is not consummated by May 31, 2019. |
| | The occurrence of a "Material Adverse Event" meaning any change, occurrence, or development occurring after May 8, 2019 that either individually or in the aggregate (i) would prevent or materially impede, interfere with, hinder, or delay the consummation of the California Acquisition contemplated by this Term Sheet, as a direct or indirect result of damage to the California Assets due to fire, earthquake or similar natural disaster, (ii) is materially adverse to the Debtors' business operated out of the Vernon, California, facility or the Amazon business, or (iii) would prevent or impair the Debtors' ability to perform their obligations under this Term Sheet or the stalking horse purchase agreement that the Debtors intend to enter into with Buyer. |
| **Binding Effect** | The Purpose of this Term Sheet is to serve as a framework for negotiation and drafting of definitive acquisition documents and related ancillary agreements. Subject to approval of the Court, this Term Sheet is intended to legally bind the parties hereto to consummate the California Acquisition. |
| **Debtors' Due Diligence Duties** | Debtors shall use good faith efforts to cause Buyer to be provided with (a) reasonable access to all pertinent financial, legal and operational documents, and information pertaining to the California Assets, and (b) reasonable access to all California Assets, the facility in Vernon, California, and customers, lessors, contract counterparties, and vendors of the Debtors. |
| | Debtors hereby consent to Christopher Carey, Azadian Group, LLC, Change Capital Holdings I, LLC, and Buyer communicating directly with vendors, landlords, and equipment lessors. Debtors also provide such consent to the foregoing persons and entities |

- 5 -

| | |
|---|---|
| | contacting the Debtors' customers; provided, however, that calls to 32 Degrees, Zara, and Amazon shall include an authorized representative of the Debtors and a representative of Change Capital Holdings I, LLC and the Azadian Group, LLC. Debtors' authorized representative during the foregoing calls will be Robert Walsh or John Kokozos.   Debtors' duties under this section are hereby collectively referred to as the "Debtors' Due Diligence Duties." |
| **Offer Expiration** | This Offer expires on May 15, 2019 unless Buyer has been selected as the stalking horse bidder for the California Assets in accordance with the terms and conditions provided herein or the parties have agreed upon other means to effect the California Acquisition. |

The foregoing correctly reflects the Parties' mutual intentions as a basis for proceeding toward negotiations of definitive agreements.

[Signature Pages Follow]

# 4120542 v. 1

EXECUTION 5.15.19

**AGREED AND ACCEPTED:**

QX LOGISTIX LLC

By: _____
Name: Raffi Azadian
Title:  Managing Member

**E Z MAILING SERVICES, INC**

By: _____
Name:
Title:

**UNITED BUSINESS FREIGHT
FORWARDERS, LLC**

By: _____
Name:
Title:

_____
**VIJAY AGGARWAL**

_____
**AJAY AGGARWAL**

AZADIAN GROUP, LLC

By: _____
Name: Raffi Azadian
Title:  Managing Member

CHANGE CAPITAL HOLDINGS I, LLC

By: _____
Name: Raffi Azadian
Title:  Managing Member

# 4120542 v. 1

**EXECUTION 5.15.19**

**AGREED AND ACCEPTED:**

          **QX LOGISTIX LLC**

          By: _____
          Name:
          Title:

          **E Z MAILING SERVICES, INC**

          By: _____
          Name:
          Title:

          **UNITED BUSINESS FREIGHT
          FORWARDERS, LLC**

          By: _____
          Name:
          Title:

          **VIJAY AGGARWAL**

          **AJAY AGGARWAL**

          **AZADIAN GROUP, LLC**

          By: _____
          Name:
          Title:

          **CHANGE CAPITAL HOLDINGS I, LLC**

          By: _____
          Name:
          Title:

**EXECUTION 5.15.19**

_____
CHRISTOPHER CAREY

RAFFI AZADIAN

- 8 -

_____
**CHRISTOPHER CAREY**


_____
**RAFFI AZADIAN**

# 4120542 v. 1

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-1(b)

LAW OFFICES OF KENNETH L. BAUM LLC
167 Main Street
Hackensack, New Jersey 07601
(201) 853-3030
(201) 584-0297 Facsimile
Kenneth L. Baum, Esq.
Attorneys for Debtors-in-Possession

| | |
|---|---|
| In re:<br><br>EZ MAILING SERVICES, INC. d/b/a EZ WORLDWIDE EXPRESS AND UNITED BUSINESS EXPRESS,<br><br>            Debtor-in-Possession. | Case No. 19-17900 (SLM)<br><br>Chapter 11<br><br>Hearing Date: _____ |
| In re:<br><br>UNITED BUSINESS FREIGHT FORWARDERS, LLC,<br><br>            Debtor-in-Possession. | Case No. 19-17906 (SLM)<br><br>Chapter 11<br><br>Hearing Date: _____ |

**ORDER AUTHORIZING AND APPROVING (A) TERM SHEET BETWEEN THE DEBTORS AND QX LOGISTIX LLC, (B) APPROVING BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS RELATED TO THEIR VERNON, CALIFORNIA AND AMAZON OPERATIONS, AND (C) SCHEDULING FINAL SALE HEARING**

The relief set forth on the following pages, numbered two (2) through eight (8), is hereby **ORDERED**.

(Page 2)

Debtor:          EZ MAILING SERVICES, INC. AND UNITED BUSINESS FREIGHT
FORWARDERS, LLC

Case No.        CASE NOS. 19-17900 (SLM) AND 19-17906 (SLM)

Caption of Order:   ORDER (A) APPROVING TERM SHEET BETWEEN THE DEBTORS
AND QX LOGISTIX LLC, (B) APPROVING BIDDING PROCEDURES
FOR THE SALE OF THE DEBTORS' ASSETS RELATED TO THEIR
VERNON, CALIFORNIA AND AMAZON OPERATIONS, AND (C)
SCHEDULING FINAL SALE HEARING

**THIS MATTER** having been opened to the Court upon the joint motion (the "**Motion**")[1]

of EZ Mailing Services, Inc. d/b/a EZ Worldwide Express and United Business Express and United

Business Freight Forwarders, LLC, the above-referenced debtors-in-possession (together, the

"**Debtors**"), by and through their undersigned counsel, pursuant to Sections 105(a), 363, and 365

of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Rules

2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy

Rules**"), and Local Rules of the United States Bankruptcy Court for the District of New Jersey

(the "**Local Rules**") 6004-1 and 6004-2, for: (a) entry of an order, *inter alia*, (i) approving that

certain term sheet between the Debtors and QX Logistix LLC ("**QX Logistix**"), (ii) approving

bidding procedures (the "**Bidding Procedures**") in connection with the sale of the Debtors' assets

related to their Vernon, California and Amazon operations (the "**California Assets**"), and (iii)

scheduling a final sale hearing (the "**Sale Hearing**") to consider entry of an order approving the

sale of the California Assets (together, the "**Interim Relief**"); and (b) an order authorizing and

approving (i) the sale of the California Assets free and clear of liens, encumbrances, and other

interests (the "**Sale**"), (ii) the assumption and assignment of the Debtors' lease of real property at

2050-2080 East 49th Street, Vernon, California (the "**Vernon Lease**"), to QX Logistix, and (iii)

---

[1] Unless otherwise noted, the capitalized terms herein shall have the definitions ascribed
to them in the Motion.

(Page 3)

| | |
|---|---|
| Debtor: | EZ MAILING SERVICES, INC. AND UNITED BUSINESS FREIGHT FORWARDERS, LLC |
| Case No. | CASE NOS. 19-17900 (SLM) AND 19-17906 (SLM) |
| Caption of Order: | ORDER (A) APPROVING TERM SHEET BETWEEN THE DEBTORS AND QX LOGISTIX LLC, (B) APPROVING BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS RELATED TO THEIR VERNON, CALIFORNIA AND AMAZON OPERATIONS, AND (C) SCHEDULING FINAL SALE HEARING |

granting related relief; and upon consideration of the Motion and all pleadings related thereto; and due and proper notice of the Motion having been given; and it appearing that no other or further notice is required; and it appearing that the Court has jurisdiction to consider the Motion and the Interim Relief sought therein in accordance with 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O); and it appearing that venue of these proceedings and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court finding that the Debtors have demonstrated a compelling and sound business justification for the Bidding Procedures and for entering into the Term Sheet with QX Logistix; and the Court finding that the Bidding Procedures substantially in the form set forth in the Motion and restated herein are fair, reasonable and appropriate and designed to maximize the recovery from the Sale; and the Court finding that the Bidding Procedures were negotiated in good faith between the Debtors and QX Logistix; and it appearing that the relief requested is in the best interest of the Debtors and their estates, and after due deliberation, and sufficient cause appearing therefor, it is hereby

ORDERED THAT:

1.     The Interim Relief sought in the Motion is granted in its entirety.  All objections to the granting of the Interim Relief that have not been withdrawn, waived or settled as

(Page 4)
Debtor:             EZ MAILING SERVICES, INC. AND UNITED BUSINESS FREIGHT
                    FORWARDERS, LLC
Case No.            CASE NOS. 19-17900 (SLM) AND 19-17906 (SLM)
Caption of Order:   ORDER (A) APPROVING TERM SHEET BETWEEN THE DEBTORS
                    AND QX LOGISTIX LLC, (B) APPROVING BIDDING PROCEDURES
                    FOR THE SALE OF THE DEBTORS' ASSETS RELATED TO THEIR
                    VERNON, CALIFORNIA AND AMAZON OPERATIONS, AND (C)
                    SCHEDULING FINAL SALE HEARING

announced to the Court at the hearing on the Motion or by application filed with the Court are

hereby overruled.

2.      The Bidding Procedures that shall govern all procedures and proceedings relating

to the Sale of the California Assets and the submission, consideration, negotiation and

acceptance of alternate sale proposals are as follows:   (a) the minimum initial overbid increment

shall be no less than $125,000; (b) any subsequent overbid increments shall be no less than

$25,000; and (c) any competitive bid must be accompanied by the payment of a good-faith

deposit of not less than $25,000, paid in immediately available funds into escrow with the

Debtors' counsel, not less than two (2) business days prior to the Sale Hearing.   If QX Logistix

is not the successful bidder for the California Assets, QX Logistix will be reimbursed for the

amount of the Hard Deposit by the successful bidder for the California Assets.   Such successful

bidder shall pay the amount of the initial overbid directly to QX Logistix at the closing of the

alternative transaction for the California Assets that is approved by the Court.   In the event of

qualified competing bids for the California Assets, the auction for the California Assets shall be

conducted at the Sale Hearing.

3.      The Term Sheet between the Debtors and QX Logistix is hereby approved in all

respects, and the Debtors and QX Logistix are authorized and directed to execute, assume,

assign, and deliver all contracts, agreements, assignments, conveyances, or other documents,

(Page 5)

| | |
|---|---|
| Debtor: | EZ MAILING SERVICES, INC. AND UNITED BUSINESS FREIGHT FORWARDERS, LLC |
| Case No. | CASE NOS. 19-17900 (SLM) AND 19-17906 (SLM) |
| Caption of Order: | ORDER (A) APPROVING TERM SHEET BETWEEN THE DEBTORS AND QX LOGISTIX LLC, (B) APPROVING BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS RELATED TO THEIR VERNON, CALIFORNIA AND AMAZON OPERATIONS, AND (C) SCHEDULING FINAL SALE HEARING |

make such payments and transfers (including, without limitation, the Hard Deposit and Over-Advance), and to take such other action, that may be necessary to fulfill the terms and provisions of the Term Sheet; provided, however, that the Sale of the California Assets, as contemplated in the Term Sheet, shall abide the outcome of the Sale Hearing and entry of an order approving the Sale.

4.      Azadian Group, LLC and Change Capital Holdings I, LLC are hereby authorized to credit bid the maximum amount of their remaining claims not already contributed under the "Consideration" section of the Term Sheet, pursuant to Section 363(k) of the Bankruptcy Code.

5.      The Sale Hearing shall be held on May ___, 2019, at ___:00 ___.m. in the _____noon, before the Honorable Stacey L. Meisel, U.S.B.J., at the United States Bankruptcy Court, Courtroom 3A, Martin Luther King, Jr. Federal Building, 50 Walnut Street, Newark, New Jersey 07102. Responses or objections ("Sale Objections"), if any, to the relief considered at the Sale Hearing must (i) be in writing, (ii) set forth with particularity the basis for the response or objection, (iii) be filed with the Clerk of the Court (with a courtesy copy delivered directly to the Chambers of the Honorable Stacey L. Meisel, U.S.B.J.) and (iv) be served on (a) the Law Offices of Kenneth L. Baum LLC, 167 Main Street, Hackensack, New Jersey 07601 (Attn:  Kenneth L. Baum, Esq.), attorneys for Debtors, (b) Stradley Ronon Stevens & Young, LLP, 100 Park Avenue, Suite 2000, New York, New York 10017 (Attn: Scott H. Bernstein, Esq. ), attorneys for

(Page 6)

| | |
|---|---|
| Debtor: | EZ MAILING SERVICES, INC. AND UNITED BUSINESS FREIGHT FORWARDERS, LLC |
| Case No. | CASE NOS. 19-17900 (SLM) AND 19-17906 (SLM) |
| Caption of Order: | ORDER (A) APPROVING TERM SHEET BETWEEN THE DEBTORS AND QX LOGISTIX LLC, (B) APPROVING BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS RELATED TO THEIR VERNON, CALIFORNIA AND AMAZON OPERATIONS, AND (C) SCHEDULING FINAL SALE HEARING |

QX Logistix, and (c) Office of the United States Trustee, 1 Newark Center, Newark, New Jersey 07102 (Attn: Mitchell B. Hausman, Esq.) (collectively, the "Objection Notice Parties"), so as to be received no later than 4:00 p.m. (New York City time) on _____ May ___, 2019 (the "Objection Deadline"); provided, however, that objections based on the Debtors' recommendation of a successful bidder at the auction or the conduct of the auction may be made at the Sale Hearing.

6.      Within ____ (___) days after the entry of this Order, the Debtors' counsel shall cause a copy of this Order to be served upon all of the Debtors' creditors, all parties that the Debtors and their professionals have identified that are likely to have an interest in submitting competing bids, all parties that have filed a notice of appearance or a request for notices pursuant to Bankruptcy Rule 2002, and parties-in-interest by postage prepaid, preaddressed First Class mail, within ____ days from entry of this Order. The notice of the Sale Hearing and the Bidding Procedures are appropriate and reasonably calculated to provide all interest parties with timely and appropriate notice of the Sale Hearing and the Bidding Procedures, and no other or further notice of the Sale Hearing and the Bidding Procedures is required.

7.      Within __ (_) days after entry of this Order, Debtors' counsel shall serve a written notice on counterparty to the Vernon Lease setting forth the proposed cure amount and the proposed assumption and assignment of the Debtors' Vernon Lease to QX Logistix.   Objections

6

(Page 7)

| | |
|---|---|
| Debtor: | EZ MAILING SERVICES, INC. AND UNITED BUSINESS FREIGHT FORWARDERS, LLC |
| Case No. | CASE NOS. 19-17900 (SLM) AND 19-17906 (SLM) |
| Caption of Order: | ORDER (A) APPROVING TERM SHEET BETWEEN THE DEBTORS AND QX LOGISTIX LLC, (B) APPROVING BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS RELATED TO THEIR VERNON, CALIFORNIA AND AMAZON OPERATIONS, AND (C) SCHEDULING FINAL SALE HEARING |

to the assumption and assignment of the Vernon Lease must be in writing and filed in the Court and served upon the Objection Notice Parties by the Objection Deadline; provided, however, that in the event the auction results in a successful bidder other than QX Logistix, the deadline for filing and serving an objection (with a copy to chambers) to the assumption and assignment of the Vernon Lease (with the exception of an objection to the proposed cure amount) to such a successful bidder shall be on _____ and the Court shall hold a hearing on _____, or as soon thereafter as counsel may be heard.

8.    Unless an objection to the assumption and assignment of the Vernon Lease is timely filed and served by the applicable objection deadline, all counterparties to the assumed and assigned Vernon Lease shall (i) be forever barred from objecting to the proposed cure amount and from asserting any additional cure or other amount with respect to the assumed and assigned Vernon lease, and the Debtors and the successful bidder shall be entitled to rely solely upon the proposed cure amount set forth in the cure notice; (ii) be deemed to have consented to the assumption and assignment; and (iii) be forever barred and estopped from asserting or claiming against the Debtors or the successful bidder that any additional amounts are due and/or other defaults exist, that conditions to assignment must be satisfied under the assumed and assigned Vernon Lease or that any objection or defense to the assumption and assignment of such Vernon Lease exists.

(Page 8)

| | |
|---|---|
| Debtor: | EZ MAILING SERVICES, INC. AND UNITED BUSINESS FREIGHT FORWARDERS, LLC |
| Case No. | CASE NOS. 19-17900 (SLM) AND 19-17906 (SLM) |
| Caption of Order: | ORDER (A) APPROVING TERM SHEET BETWEEN THE DEBTORS AND QX LOGISTIX LLC, (B) APPROVING BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS RELATED TO THEIR VERNON, CALIFORNIA AND AMAZON OPERATIONS, AND (C) SCHEDULING FINAL SALE HEARING |

9.      This Court shall retain jurisdiction with respect to all matters arising from or

related to the implementation of this Order.

10.      Notwithstanding any Bankruptcy Rule or Local Bankruptcy Rule to the contrary,

this Order is effective and enforceable immediately upon signature hereof.

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-1(b)

LAW OFFICES OF KENNETH L. BAUM LLC
167 Main Street
Hackensack, New Jersey 07601
(201) 853-3030
(201) 584-0297 Facsimile
Kenneth L. Baum, Esq.
Attorneys for Debtors-in-Possession

| | |
|---|---|
| In re:<br><br>EZ MAILING SERVICES, INC. d/b/a EZ WORLDWIDE EXPRESS AND UNITED BUSINESS EXPRESS,<br><br>    Debtor-in-Possession. | Case No. 19-17900 (SLM)<br><br>Chapter 11<br><br>Hearing Date: _____ |
| In re:<br><br>UNITED BUSINESS FREIGHT FORWARDERS, LLC,<br><br>    Debtor-in-Possession. | Case No. 19-17906 (SLM)<br><br>Chapter 11<br><br>Hearing Date: _____ |

**ORDER AUTHORIZING AND APPROVING (A) THE SALE OF THE DEBTORS'
ASSETS RELATED TO THEIR VERNON, CALIFORNIA AND AMAZON
OPERATIONS TO QX LOGISTIX LLC, FREE AND CLEAR OF LIENS AND OTHER
INTERESTS, PURSUANT TO SECTIONS 363(b), (f), AND (m) OF THE BANKRUPTCY
CODE AND (B) THE ASSUMPTION AND ASSIGNMENT OF THE DEBTORS' LEASE
OF REAL PROPERTY AT 2050-2080 EAST 49TH STREET, VERNON, CALIFORNIA,
TO QX LOGISTIX LLC, PURSUANT TO SECTIONS 365(a) and (f) OF THE
BANKRUPTCY CODE, AND GRANTING RELATED RELIEF**

  The relief set forth on the following pages, numbered two (2) through eleven (11), is
hereby **ORDERED**.

(Page 2)

| | |
|---|---|
| Debtor: | EZ MAILING SERVICES, INC. AND UNITED BUSINESS FREIGHT FORWARDERS, LLC |
| Case No. | CASE NOS. 19-17900 (SLM) AND 19-17906 (SLM) |
| Caption of Order: | ORDER AUTHORIZING AND APPROVING (A) THE SALE OF THE DEBTORS' ASSETS RELATED TO THEIR VERNON, CALIFORNIA AND AMAZON OPERATIONS TO QX LOGISTIX LLC, FREE AND CLEAR OF LIENS AND OTHER INTERESTS, PURSUANT TO SECTIONS 363(b), (f), AND (m) OF THE BANKRUPTCY CODE AND (B) THE ASSUMPTION AND ASSIGNMENT OF THE DEBTORS' LEASE OF REAL PROPERTY AT 2050-2080 EAST 49TH STREET, VERNON, CALIFORNIA, TO QX LOGISTIX LLC, PURSUANT TO SECTIONS 365(a) and (f) OF THE BANKRUPTCY CODE, AND GRANTING RELATED RELIEF |

**THIS MATTER** having been opened to the Court upon the joint motion (the "**Motion**")[1] of EZ Mailing Services, Inc. d/b/a EZ Worldwide Express and United Business Express and United Business Freight Forwarders, LLC, the above-referenced debtors-in-possession (together, the "**Debtors**"), by and through their undersigned counsel, pursuant to Sections 105(a), 363, and 365 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "**Local Rules**") 6004-1 and 6004-2, for entry of an order authorizing and approving (i) the sale of the Debtors' assets related to their Vernon, California and Amazon operations (the "**California Assets**") to QX Logistix LLC ("**QX Logistix**"), free and clear of liens, encumbrances, and other interests (the "**Sale**"), except to the extent set forth in the Asset Purchase Agreement, (ii) the Asset Purchase Agreement, and (iii) the assumption and assignment of the Debtors' lease of real property at 2050-2080 East 49th Street, Vernon, California (the "**Vernon Lease**"), to QX Logistix, and granting related relief; and upon

---

[1] Unless otherwise noted, the capitalized terms herein shall have the definitions ascribed to them in the Motion.

(Page 3)

| | |
|---|---|
| Debtor: | EZ MAILING SERVICES, INC. AND UNITED BUSINESS FREIGHT FORWARDERS, LLC |
| Case No. | CASE NOS. 19-17900 (SLM) AND 19-17906 (SLM) |
| Caption of Order: | ORDER AUTHORIZING AND APPROVING (A) THE SALE OF THE DEBTORS' ASSETS RELATED TO THEIR VERNON, CALIFORNIA AND AMAZON OPERATIONS TO QX LOGISTIX LLC, FREE AND CLEAR OF LIENS AND OTHER INTERESTS, PURSUANT TO SECTIONS 363(b), (f), AND (m) OF THE BANKRUPTCY CODE AND (B) THE ASSUMPTION AND ASSIGNMENT OF THE DEBTORS' LEASE OF REAL PROPERTY AT 2050-2080 EAST 49TH STREET, VERNON, CALIFORNIA, TO QX LOGISTIX LLC, PURSUANT TO SECTIONS 365(a) and (f) OF THE BANKRUPTCY CODE, AND GRANTING RELATED RELIEF |

consideration of the Motion and all pleadings related thereto; and due and proper notice of the Motion, the Sale Hearing, the Sale and the Debtors' intent to assume and assign the Vernon Lease having been provided to all persons and entities required to be served in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and Orders of this Court; and it appearing that no other or further notice of the Motion, the Sale Hearing, the Sale or the Debtors' intent to assume and assign the Vernon Lease is or shall be required; and it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O); and it appearing that venue of these proceedings and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Debtors have the legal power and authority to convey all of their rights, title and interest in and to the California Assets; and the Debtors and their professionals have actively marketed the California Assets and conducted a sale process in compliance with the Bidding Procedures Order, and have afforded potential purchasers a full and fair opportunity to make higher and better offers; and QX Logistix is the successful bidder which submitted the highest and/or best offer for the California Assets, and its offer is fair and reasonable; and the Debtors have demonstrated a sound business justification and purpose of the Sale and the entry

(Page 4)
Debtor:            EZ MAILING SERVICES, INC. AND UNITED BUSINESS FREIGHT
                   FORWARDERS, LLC
Case No.           CASE NOS. 19-17900 (SLM) AND 19-17906 (SLM)
Caption of Order:  ORDER AUTHORIZING AND APPROVING (A) THE SALE OF THE
                   DEBTORS' ASSETS RELATED TO THEIR VERNON, CALIFORNIA
                   AND AMAZON OPERATIONS TO QX LOGISTIX LLC, FREE AND
                   CLEAR OF LIENS AND OTHER INTERESTS, PURSUANT TO
                   SECTIONS 363(b), (f), AND (m) OF THE BANKRUPTCY CODE AND
                   (B) THE ASSUMPTION AND ASSIGNMENT OF THE DEBTORS'
                   LEASE OF REAL PROPERTY AT 2050-2080 EAST 49TH STREET,
                   VERNON, CALIFORNIA, TO QX LOGISTIX LLC, PURSUANT TO
                   SECTIONS 365(a) and (f) OF THE BANKRUPTCY CODE, AND
                   GRANTING RELATED RELIEF

into the Asset Purchase Agreement; and it appearing that the relief requested is in the best

interest of the Debtors and their estates, and after due deliberation, and sufficient cause appearing

therefor, it is hereby

       ORDERED THAT:

       1.      The relief requested in the Motion is granted in its entirety.

       2.      All objections and responses concerning the Motion are resolved in accordance

with the terms of this Sale Order and as set forth in the record of the Sale Hearing and to the

extent any such objection or response was not otherwise withdrawn, waived or settled, it is

overruled on the merits and denied (including all reservation of rights or requests therein with

prejudice).

       3.      The sale of the California Assets to QX Logistix, free and clear of all liens,

claims, and other interests, on the terms and conditions set forth in the Asset Purchase

Agreement, is approved pursuant to Sections 363(b) and (f) of the Bankruptcy Code.

       4.      The consideration provided by QX Logistix for the California Assets under the

Asset Purchase Agreement, including the portion of the consideration that consisted of the credit

bid, is fair and reasonable and shall be deemed for all purposes to constitute reasonably

(Page 5)

| | |
|---|---|
| Debtor: | EZ MAILING SERVICES, INC. AND UNITED BUSINESS FREIGHT FORWARDERS, LLC |
| Case No. | CASE NOS. 19-17900 (SLM) AND 19-17906 (SLM) |
| Caption of Order: | ORDER AUTHORIZING AND APPROVING (A) THE SALE OF THE DEBTORS' ASSETS RELATED TO THEIR VERNON, CALIFORNIA AND AMAZON OPERATIONS TO QX LOGISTIX LLC, FREE AND CLEAR OF LIENS AND OTHER INTERESTS, PURSUANT TO SECTIONS 363(b), (f), AND (m) OF THE BANKRUPTCY CODE AND (B) THE ASSUMPTION AND ASSIGNMENT OF THE DEBTORS' LEASE OF REAL PROPERTY AT 2050-2080 EAST 49TH STREET, VERNON, CALIFORNIA, TO QX LOGISTIX LLC, PURSUANT TO SECTIONS 365(a) and (f) OF THE BANKRUPTCY CODE, AND GRANTING RELATED RELIEF |

equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the sale may not be avoided, or costs or damages imposed or awarded, under Section 363(n) or any other provision of the Bankruptcy Code.

5.    The Sale transaction is undertaken by QX Logistix in good faith,  QX Logistix is a buyer in good faith of the California Assets as that term is used in Section 363(m) of the Bankruptcy Code, and QX Logistix is entitled to all protections afforded by Section 363(m) of the Bankruptcy Code.  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the sale (including the assumption, assignment, and sale of the Vernon Lease), unless such authorization is duly stayed pending appeal.

6.    Except for the Assumed Liabilities (as defined in the Asset Purchase Agreement), and as expressly provided in the Asset Purchase Agreement, QX Logistix is not assuming nor shall it or any affiliate of QX Logistix be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors in any way relating to or arising from the Debtors' ownership or use of the California Assets prior to the consummation of the transactions contemplated by the Asset Purchase Agreement, or any liabilities calculable by

(Page 6)

| | |
|---|---|
| Debtor: | EZ MAILING SERVICES, INC. AND UNITED BUSINESS FREIGHT FORWARDERS, LLC |
| Case No. | CASE NOS. 19-17900 (SLM) AND 19-17906 (SLM) |
| Caption of Order: | ORDER AUTHORIZING AND APPROVING (A) THE SALE OF THE DEBTORS' ASSETS RELATED TO THEIR VERNON, CALIFORNIA AND AMAZON OPERATIONS TO QX LOGISTIX LLC, FREE AND CLEAR OF LIENS AND OTHER INTERESTS, PURSUANT TO SECTIONS 363(b), (f), AND (m) OF THE BANKRUPTCY CODE AND (B) THE ASSUMPTION AND ASSIGNMENT OF THE DEBTORS' LEASE OF REAL PROPERTY AT 2050-2080 EAST 49TH STREET, VERNON, CALIFORNIA, TO QX LOGISTIX LLC, PURSUANT TO SECTIONS 365(a) and (f) OF THE BANKRUPTCY CODE, AND GRANTING RELATED RELIEF |

reference to the Debtors or their operation of the California Assets, or relating to continuing or other conditions existing on or prior to the Closing Date, which liabilities, debts, and obligations are hereby extinguished insofar as they give rise to liability, successor or otherwise against QX Logistix or any affiliate of QX Logistix.

7.    QX Logistix shall not be deemed a successor of or to the Debtors or the Debtors' estates with respect to claims against the Debtors and the California Assets, and QX Logistix or any affiliate of QX Logistix shall not be liable in any way for any such claims.  Upon closing of the Sale, all creditors, employees and other parties in interest of the Debtors are permanently and forever barred, restrained and enjoined from (a) asserting any claims or enforcing remedies, or commencing or continuing in any manner any action or other proceeding of any kind  against QX Logistix, any affiliate of QX Logistix or the California Assets, or (b) asserting any claim or enforcing any remedies under any theory of successor liability, *de facto* merger, substantial continuity or similar theory.

8.    The Debtors are authorized and directed to execute, assume, assign, and deliver all contracts, agreements, assignments, conveyances, or other documents and to take such other action that may be necessary to fulfill the terms and provisions of the Term Sheet.

# 4121946 v. 2

(Page 7)

| | |
|---|---|
| Debtor: | EZ MAILING SERVICES, INC. AND UNITED BUSINESS FREIGHT FORWARDERS, LLC |
| Case No. | CASE NOS. 19-17900 (SLM) AND 19-17906 (SLM) |
| Caption of Order: | ORDER AUTHORIZING AND APPROVING (A) THE SALE OF THE DEBTORS' ASSETS RELATED TO THEIR VERNON, CALIFORNIA AND AMAZON OPERATIONS TO QX LOGISTIX LLC, FREE AND CLEAR OF LIENS AND OTHER INTERESTS, PURSUANT TO SECTIONS 363(b), (f), AND (m) OF THE BANKRUPTCY CODE AND (B) THE ASSUMPTION AND ASSIGNMENT OF THE DEBTORS' LEASE OF REAL PROPERTY AT 2050-2080 EAST 49TH STREET, VERNON, CALIFORNIA, TO QX LOGISTIX LLC, PURSUANT TO SECTIONS 365(a) and (f) OF THE BANKRUPTCY CODE, AND GRANTING RELATED RELIEF |

9.      Pursuant to Section 363(f) of the Bankruptcy Code, the Sale shall be free and clear of all liens, claims, encumbrances, and interests of any kind and nature, whether arising before or after the commencement of these cases, and whether imposed by agreement, understanding, law, equity, or otherwise (with the exception of certain permitted encumbrances set forth in the Asset Purchase Agreement), with any valid liens or security interests to attach to the sale proceeds in the same order of priority as they existed before the Sale.

10.     All persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding claims or interests in the California Assets (other than permitted encumbrances set forth in the Asset Purchase Agreement) arising in any way in connection with any acts, or failure to act, of the Debtors or the Debtors' predecessors or affiliates, claims (as that term is defined in Section 101(5) of the Bankruptcy Code), obligations, demands, or guaranties of any kind and nature against or in the Debtors or the California Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the California Assets, the operation of the Debtors' businesses prior to the Closing Date, or the

(Page 8)

| | |
|---|---|
| Debtor: | EZ MAILING SERVICES, INC. AND UNITED BUSINESS FREIGHT FORWARDERS, LLC |
| Case No. | CASE NOS. 19-17900 (SLM) AND 19-17906 (SLM) |
| Caption of Order: | ORDER AUTHORIZING AND APPROVING (A) THE SALE OF THE DEBTORS' ASSETS RELATED TO THEIR VERNON, CALIFORNIA AND AMAZON OPERATIONS TO QX LOGISTIX LLC, FREE AND CLEAR OF LIENS AND OTHER INTERESTS, PURSUANT TO SECTIONS 363(b), (f), AND (m) OF THE BANKRUPTCY CODE AND (B) THE ASSUMPTION AND ASSIGNMENT OF THE DEBTORS' LEASE OF REAL PROPERTY AT 2050-2080 EAST 49TH STREET, VERNON, CALIFORNIA, TO QX LOGISTIX LLC, PURSUANT TO SECTIONS 365(a) and (f) OF THE BANKRUPTCY CODE, AND GRANTING RELATED RELIEF |

transfer of the California Assets to QX Logistix and the subsequent assumption and assignment of the Vernon Lease, hereby are, and will be, except as provided for in the Asset Purchase Agreement, (upon consummation of an assumption and assignment of the Vernon Lease) are forever barred, estopped, and permanently enjoined from asserting against the QX Logistix, its successors or assigns, their property, or any designee, such persons' or entities' interests or claims in the California Assets or against the Debtors.

11.    Subject to the terms and conditions of this Order, the transfer of the California Assets to QX Logistix does not require any consents other than as specifically provided in the Asset Purchase Agreement and constitutes a legal, valid and effective transfer of the California Assets, and shall vest QX Logistix with all right, title and interest of the Debtors in and to the California Assets.

12.    The Debtors are authorized to execute and file such statements, instruments, releases, and other documents as may be necessary to discharge, release and remove all liens with respect to the Property.

13.    The assumption and assignment of the Vernon Lease to QX Logistix is approved pursuant to Sections 365(a) and (f) of the Bankruptcy Code. All defaults or other obligations of

# 4121946 v. 2

(Page 9)

| | |
|---|---|
| Debtor: | EZ MAILING SERVICES, INC. AND UNITED BUSINESS FREIGHT FORWARDERS, LLC |
| Case No. | CASE NOS. 19-17900 (SLM) AND 19-17906 (SLM) |
| Caption of Order: | ORDER AUTHORIZING AND APPROVING (A) THE SALE OF THE DEBTORS' ASSETS RELATED TO THEIR VERNON, CALIFORNIA AND AMAZON OPERATIONS TO QX LOGISTIX LLC, FREE AND CLEAR OF LIENS AND OTHER INTERESTS, PURSUANT TO SECTIONS 363(b), (f), AND (m) OF THE BANKRUPTCY CODE AND (B) THE ASSUMPTION AND ASSIGNMENT OF THE DEBTORS' LEASE OF REAL PROPERTY AT 2050-2080 EAST 49TH STREET, VERNON, CALIFORNIA, TO QX LOGISTIX LLC, PURSUANT TO SECTIONS 365(a) and (f) OF THE BANKRUPTCY CODE, AND GRANTING RELATED RELIEF |

the Debtors under the Vernon Lease arising or accruing prior to the Closing Date (without giving

effect to any acceleration clauses or any default provisions of the kind specified in Section

365(b)(2) of the Bankruptcy Code) shall be deemed cured by the payment or other satisfaction of

the Cure Costs in the amounts set forth on Exhibit B to this Order (the "Cure Amount"). The

Cure Amount is hereby fixed at the amount set forth on Exhibit B and the non-Debtor parties to

the Vernon Lease are hereby forever bound by such Cure Amount. Except for the Cure Amount,

there are no other defaults existing under the Vernon Lease. The Cure Amount is not subject to

further dispute or audit, including based on performance prior to the assumption, assignment and

sale thereof, irrespective of whether the Vernon Lease contains an audit or similar clause. QX

Logistix shall pay or otherwise satisfy the Cure Amount as soon as reasonably practicable

following the Closing Date.

14.     Except for  QX Logistix's obligation to pay or otherwise satisfy the Cure Amount

or as provided for in the Asset Purchase Agreement, each non-Debtor party to the Vernon Lease

is hereby forever barred, estopped, and permanently enjoined from asserting against QX Logistix

or the California Assets any default, additional amounts or other claims existing as of the Closing

Date related to the Vernon Lease, whether declared or undeclared or known or unknown, and

(Page 10)

| | |
|---|---|
| Debtor: | EZ MAILING SERVICES, INC. AND UNITED BUSINESS FREIGHT FORWARDERS, LLC |
| Case No. | CASE NOS. 19-17900 (SLM) AND 19-17906 (SLM) |
| Caption of Order: | ORDER AUTHORIZING AND APPROVING (A) THE SALE OF THE DEBTORS' ASSETS RELATED TO THEIR VERNON, CALIFORNIA AND AMAZON OPERATIONS TO QX LOGISTIX LLC, FREE AND CLEAR OF LIENS AND OTHER INTERESTS, PURSUANT TO SECTIONS 363(b), (f), AND (m) OF THE BANKRUPTCY CODE AND (B) THE ASSUMPTION AND ASSIGNMENT OF THE DEBTORS' LEASE OF REAL PROPERTY AT 2050-2080 EAST 49TH STREET, VERNON, CALIFORNIA, TO QX LOGISTIX LLC, PURSUANT TO SECTIONS 365(a) and (f) OF THE BANKRUPTCY CODE, AND GRANTING RELATED RELIEF |

such non-Debtor parties to the Vernon Leases also forever barred, estopped, and permanently

enjoined from asserting against QX Logistix any counterclaim, defense or setoff, or any other

claim, lien or interest, asserted or assertable against the Debtors related to the Vernon Leas

15.     There shall be no rent accelerations, assignment fees, increases or any other fees

charged or chargeable to QX Logistix as a result of the assumption, assignment and sale of the

Vernon Lease. Any provisions in the Vernon Lease that prohibits or conditions the assignment

of the Vernon Lease, allows the party to the Vernon Lease to terminate, recapture, impose any

penalty, condition renewal or extension, or modify any term or condition upon the assignment of

the Vernon Lease, constitute unenforceable anti-assignment provisions, and are void and of no

force and effect. The validity of the assumption, assignment and sale of the Vernon Lease to

QX Logistix shall not be affected by any existing dispute between any of the Debtors and any

non- Debtor party to the Vernon Lease. Any party that may have had the right to consent to the

assignment of the Vernon Lease is determined to have consented for the purposes of Section

365(e)(2)(A)(ii) of the Bankruptcy Code.

16.     The provisions of Bankruptcy Rule 6006(d) are hereby waived.

17.     The provisions of Bankruptcy Rule 6004(h) are hereby waived.

(Page 11)

| | |
|---|---|
| Debtor: | EZ MAILING SERVICES, INC. AND UNITED BUSINESS FREIGHT FORWARDERS, LLC |
| Case No. | CASE NOS. 19-17900 (SLM) AND 19-17906 (SLM) |
| Caption of Order: | ORDER AUTHORIZING AND APPROVING (A) THE SALE OF THE DEBTORS' ASSETS RELATED TO THEIR VERNON, CALIFORNIA AND AMAZON OPERATIONS TO QX LOGISTIX LLC, FREE AND CLEAR OF LIENS AND OTHER INTERESTS, PURSUANT TO SECTIONS 363(b), (f), AND (m) OF THE BANKRUPTCY CODE AND (B) THE ASSUMPTION AND ASSIGNMENT OF THE DEBTORS' LEASE OF REAL PROPERTY AT 2050-2080 EAST 49TH STREET, VERNON, CALIFORNIA, TO QX LOGISTIX LLC, PURSUANT TO SECTIONS 365(a) and (f) OF THE BANKRUPTCY CODE, AND GRANTING RELATED RELIEF |

18.     This Sale Order and the Asset Purchase Agreement shall be binding in all respects upon all creditors (whether known or unknown) of any Debtor, all successors, assigns, affiliates and subsidiaries of any Debtor, and any subsequent trustee appointed in the Debtors' Chapter 11 cases or upon a conversion of the Debtors' bankruptcy cases to cases under Chapter 7 of the Bankruptcy Code and shall not be subject to rejection.  To the extent any provision of this Sale Order is inconsistent with the terms of the Asset Purchase Agreement, this Sale Order shall govern.

19.     Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in the Debtors' Chapter 11 cases, or in any subsequent or converted cases of the Debtors under Chapter 7 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order.

20.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

# 4121946 v. 2